Good morning, Your Honors. May it please the Court, Rebecca Jones representing appellant Anthony Trevino. I'd like to reserve two minutes for rebuttal. This case presents two separate but related questions. The first is whether a habeas petitioner needs to use Rule 60B to restart litigation on a petition that was incorrectly dismissed as next. And the second is what is a habeas petitioner supposed to do when a federal district judge erroneously directs the petitioner to file no more pleadings in the case and threatens to ignore future filings, which presumably includes a notice of appeal as well, since Rule 4A or, excuse me, 4B of the Federal Rules of Appellate Procedure direct criminal defendants to file their notice of appeal in the district court. The answer to number one, whether you have to resort to Rule 60B to reopen the litigation, is answered by reference in part to the facts of the trial court's erroneous order of directing the petitioner not to file any more pleadings in the case. When a district court erroneously dismisses the petition, because by that point the defendant, the petitioner, had already filed a motion to withdraw the single unexhausted claim, and then affirmatively misleads the petitioner into believing that he cannot file a single additional pleading in the case. Kagan. But wait a minute. There were two. First, there was a dismissal which said that it was a filed dismissal, and then it was dismissing the action.  And that was before, that was months before there was any such order. True. So at that point, he could have filed an appeal. No doubt. Yes, he could have at that point. No doubt. He did not. And no doubt that he could have done that. Right. Or he could have refiled. And there's no doubt that he could have filed a new petition, which is what he was told to do, with absolutely no time problem or any other problem. Correct. Unlike in some of the other cases where the time had already run by then. Right. There was no time problem. No time problem. And there was no time problem for quite a while. There was no time problem even after the order was issued. About a year and a half. Right. I think is when the ADEPA limitations kicked in. So just have to be really precise because it's very complicated in terms of timing. This is complicated in terms of timing. It's complicated in terms of procedure. I mean, I think we have a fair amount of disagreement about whether, like I said at the very beginning, whether we even need, whether this is a Rule 60 issue or whether this is an amendment to the initial petition that relates back. I think both answers questions, even if we, if it's treated as a Rule 60 or relating back, still end up hinging on a lot of the same equities. There's no doubt the petitioner could have filed a notice of appeal or could have filed an amended petition in that year and a half. Where do you get a year and a half? It says the petition for rid of, the order says the petition for rid of habeas corpus was dismissed on September 8th, 1995, and the order prohibiting any filings and disregarding any filings is May 14th, 1996. I'm only saying a year and a half in terms of assuming the petitioner would have ignored Judge Gonzales's order at that time. It was about a year and a half from the September 15th to the running of the ADEPA limitations in April 1997. But there was certainly seven months. But there was certainly seven months. They had no problem at all. And in fact, by the time he filed the second order, the second motion, the time for appeal had run anyway. So whether he could have filed an appeal or not filed an appeal is sort of irrelevant. The time for appeal had run. Well, it's not 100 percent irrelevant at that point in time simply because what happened in that first seven months is he got a lawyer. And we have proof that he had a lawyer because we have, you know, the lawyer's name on the motion for reconsideration, which Judge Gonzales refused, not only refused to consider, but said, I'm not even going to look at it. I'm not going to look at it. I'm not going to look at anything else you file. You're done. And the problem is, is you've got a pro per petitioner who already previously had in June, I believe it was, of 95, had filed exactly what he needed to file to fix this mixed petition. And the Court ignored it. So then he toddled along and, granted, could he have physically, is it possible in the world he could have filed objections? He filed an amended petition? He did not file an amended petition until I filed it for him in 2004. Kennedy, so when you say he filed exactly what he needed to file, he did not file exactly what he needed to file at the time. I respectfully disagree, Your Honor. And the reason I disagree is because I don't think when you look at the language of Rose v. Lundy and you look at all the other cases that talk about mixed petitions and how you cure a mixed petition, you say if you strike the exhausted or unexhausted claims, then you're fine. So you withdraw or dismiss or file an amended petition. Right. And he withdrew. He filed a piece of paper and withdrew on an exhausted claim. And he filed a motion and the motion was never ruled on, one way or the other. Right. And she – but see, what happens is you've got a pro-perpetitioner, so of course, you know, we have to give them a little bit, at least a little bit of extra consideration because they're pro-per. What I'm saying is something surely went wrong because he filed a motion, whether it was a good motion or a bad motion, it was never acted on. Right. And the problem is, is that you've got a – what I was trying to say, Your Honor, is just the pro-perpetitioner starts off and actually does the right thing, or attempts to do the right thing if you want, by withdrawing anything. And then he's trying to do something and nobody's paying him attention. Then he gets a lawyer and he gets not only ignored, but basically yelled at by the judge who says, I'm not reading this, and documents filed by Petitioner since the closing date will be disregarded and no more petition. A closing date of what? A closing date of what? What did it say exactly? You know, I guess it means – it doesn't say. It just says closing date. I think what she means is the date of the dismissal of the prior petition. But isn't it fairly clear that she's talking about this case? I mean, it was quite clear to me that if he had filed another case with another petition, this order couldn't apply to him. So you're saying he should have just filed a brand-new petition under a new number? Right. That's what he was told to do the first time. And there's nothing in this order that precluded him from doing it. I guess that's certainly possible. Well, I think what I would say is that the original recommendation from the magistrate suggested that he would re-file under the same number either a fully exhausted petition of some sort, and I think he would run the risk if he filed a new petition. At that point, there was no need. It didn't matter, right? If he had filed a new petition, it would have been just as good as he – as a new case with a new number, it would have been just as good as he filed an old case. There was no relation back problem. There was no second and successor petition problem. There was just no problem. Because I haven't considered the possibility of re-filing under an entirely new number before, Your Honor, I'm just – I'm trying to sort out in my head whether there's potentially second or successive petition problems, since he would be filing under a new number. It was just my understanding that these cases always go – you just keep going under the same number, sort of under the – like the stay and abey, except without a stay and obey. So – But there was no reason – but the reason for the stay and abeyance was mainly because there was a reason to do that. There is no reason in this instance. Oh, right. And so – and I wasn't practicing 2254 prior to ADEPA, so I don't know when those folks back prior to ADEPA were getting their cases dismissed under – for – as being mixed petitions, whether they were coming back and re-filing under a new number or filing back under the old number. And I haven't seen anything in the cases that I've been looking at that give me any indication of what the proper procedure would have been. And I think that's – you know, that's part of the problem in this entire case, is we don't – the proper procedures just simply aren't clear. And to expect pro per petitioners to deal with these and sort out all the rulings and sort out the – the judge is telling me don't file anything else. All that being said, he did wait an awfully long time. I mean, he finally did figure it out. He got – he was a lawyer, and now we know what he was supposed to do. But he waited an awful long – he waited seven years. And nothing at all, practically nothing at all, which is – I realize seven years is probably our worst fact in the case besides some of the facts in the underlying claim. But like I say – Everything else is very good for you. But seven years is sort of – is like a lump over here on the other side of the scale. Is there a factual – It's a big lump. – factual record on what efforts he made during the seven years? Was there an evidentiary hearing? There was no evidentiary hearing, and Judge Gonzales seemed to pretty much accept the representations that I made in my pleadings about his mother sort of periodically bothering the pro bono attorney and saying what's going on, what's going on. And then finally, I believe about five to six years into things, he finally sent a letter on a – That was a pro bono attorney? Yes. The one who did nothing at all? Yes. If you look at the – I don't know what page it's on in the – in the excerpt, but it says pro bono under his name. He wanted to make sure the Court knew he was doing it for free. It's good to get your pro bono credit that way. You do nothing at all. You get what you pay for, Your Honor. But, you know, the important thing is – All this guy had to do at that point was file a new case, and he would have been just fine. I don't think that that was that clear, though, because he already had this other case. He was going to file exactly the same claims. And I don't know that it was clear from this saying, well, if you file under a new number – I mean, I didn't even realize until you brought it up today. Well, he could have just filed the same petition, but just given it a new number, and then everything would have started over, and this – this order from Judge Gonzalez would have been void. Well, anyway. I mean, she's issuing an order saying stop filing things regarding your petition. Unless you file them under a new number, then everything's fine. The Court can't – Yeah, but it didn't say that. Can't figure it out. They're the same guy, you know. It's a new number. I mean, seriously, Your Honor. I had no – I didn't even know until you brought it up now that that was a possibility, that he just filed something new under a new number, and all of a sudden this is void. And I think the problem with the seven years, Judge Kosinski, is that, from our perspective, is it even took me a very long time to figure out there's just – there's something about this that smells wrong all along, which Judge Gersen pointed out, that it's just – you know, there's a mistake made here. There's something wrong. And it's not just one mistake. It's two big mistakes. This guy fixed his adequate – his petition in 1995. He fixed it. And he's never gotten a ruling on the merits. And then the judge tells him, don't file anything else ever. Well, let's assume the issue is what it really is, that there was an error made, two errors made, and then seven years later he succeeds in filing something that tries to correct it. Normally, you can't wait seven years to correct an error. So the question is – let's use a term – are there extraordinary circumstances that would justify equitable tolling? And you say you – the judge accepted your representations as being accurate for purposes of her ruling, which I assume you're treating as finding that there are not equitable circumstances or extraordinary circumstances that warrant equitable tolling. If that's her ruling, do you think that that can be reversed under our standards? Yes, it can, because the judge – And what's the argument that there are extraordinary circumstances that warrant equitable tolling for that seven-year period? Because there was an order from the district court, which I have never seen in any other case, saying stop filing pleadings. We file them all the time. Why? They're not – they haven't made it into the published opinions. I mean, this is not a case of a vexatious litigant getting that kind of order, an appropriate order. This was not only an entirely – It may be a bad idea, but we do do it. Pardon? It may well be a bad idea, but we do do it. Oh, to have filed the order? Well, yeah. But, I mean, the problem is, is you're telling a pro per don't file anything anymore in this case, and he then has to wait. And he gets a worse order from her after he gets a lawyer than he was – than the order he got when he was proceeding in pro per. So that you really have to say, you have to excuse this guy until he's got a lawyer who's willing to look through the case and take it on and try to make a decision about it, whether there's anything to be filed in the case and get it refiled. Let me just say one thing. It seems to me in terms of the current petition, the current motion or application, that the best – the clearest posture put in it, just as a legal rubric, is the one that Judge Gonzales put it in, and that is that it's a 6db6 motion. What else could it be at this point? And then you would have an extraordinary circumstances standard. But it's not exactly an equitable toning problem, because if you now filed a new petition, you'd obviously have a big problem. Right. So you don't want it to be a new petition. You want it to be the old petition. And if it's going to be the old petition, then you have – it seems to me it's a 6db6 or nothing. See, I disagree. I think under Anthony v. Canberra and Ford v. Hubbard, which, of course, the Supreme Court in Filer v. Ford didn't touch this. He said Ford v. Hubbard. Now, Anthony, of course, was a different situation, because there the district court chose to essentially lift the judgment. I mean, it was an implicit 6db motion. What else? And it was within the year. No, there was a relation back, though. That got filed, and they related it back. I understand that. But there was – That's right, because they essentially – in order to do that, though, they had to implicitly lift the judgment. But the district judge was the one who did it and had the authority to lift the judgment. See, Your Honor, I disagree with that. And the reason I disagree is the same thing I pointed out in my briefs. When – pre-DEFA practice, when these folks were not having to get the stay and obey and they were just – they were filing, they were saying let's submit this petition, dismiss, go back. Were they getting a rule 6db every single time they were going back and refiling their fully exhausted petitions? I don't think so. I mean, it didn't – it doesn't fit into any of the 6db categories. No, but in that instance, it did matter. The timing did matter. Or I guess whether we're second success was what mattered. But in any event, it mattered. And – but the point I'm making here is that it was – although this was misstated, I think, in your brief, it was the district court that did it, not the court of appeals that ordered it. Oh, I don't – All the court of appeals was doing was reviewing whether the district court had the authority  Yes, I believe that's correct. And I'm sorry if I misstated. Therefore, it seems to me it was implicit, and there was later opinion of this Court, later dismissed as moot, which says this, that what was implicit was that there was a rule 6db motion granted sort of sub salentio because the district court had the authority to do that. And also, it was within the year, so it was a proper 6db1 motion as opposed to a 6db6 motion at that point. You know, all I can say, Your Honor, my suspicion is that the Court is going to construe this as a 6db motion and not go with my argument that it's really just a Rule 15 relation back. But I have to say that – Ultimately, the question isn't really exactly an equitable tolling question, although the considerations may be the same. It's really whether the district judge abused his discretion in not finding extraordinary circumstances under 6db. Is that basically where we are? Yes. That's where we are, certainly, in the 6db analysis. And, again, just this extraordinary order saying don't file anything anymore and certainly not telling the defendant. But if you file under a different number, it's fine. It's just affirmatively misleading under Plyler v. Ford. But there's also a reasonable time caveat to 6db. There is. So that's basically where we are. Is this a reasonable time? And, again, my – Assuming it's an extraordinary circumstance, is it a reasonable time? It's not. It is an extraordinary circumstance and the time is reasonable given the problematic way in which the district court previously addressed the Petitioner's pleadings. He basically was at a loss to figure out what he could do until he had the assistance of counsel that was going to go back and say, okay, we're going to be aggressive with this and go back in and try to get the court to hear this case on the merits. I know I've gone way over your honors, but I would appreciate a minute for rebuttal if that's possible. Thank you. Deputy Attorney General Matthew Mulford for the ward. May it please the Court. The Court's questioning indicates that I think we're all up to speed on exactly what we're dealing with regarding the 2004 attempt to amend the petition. It must be a Rule 60b-6 motion. Nothing else applies. If he wanted to file a new, fully exhaustive petition, nothing would prevent him from doing that today. Except it would be untimely. Exactly. It would be barred by the statute of limitations. You don't think that if a court tells a party, particularly a broker, don't file any more papers, and he takes the law seriously, that he might think he would be in contempt if he filed exactly the same paper again, but just changed the number on it? I would hope not, but I think that's the obligation the law places on him, proper or not. And if we take questions of, you know, appellate jurisdiction seriously, and we have rules regarding times, regarding appeal, and regarding finality of judgments, then we really can't have any other answer. And we expect everybody to know when you're told, don't do something, don't come back, don't file anything, any more papers, that they should know that, yes, don't pay any attention to that, just file the papers again, but put a different number on it. They might not be reasonable to think that that would be disrespecting the law? No. Frankly, no. At any event, at that point, he wasn't uncounseled. He was counseled at the point that the order was issued. So that raises the question of whether the lawyer's failure to do the obvious thing at that point, either to come back, as Ms. Jones has done now, and say, wait a minute, or to file a new petition or to file an appeal anyway, was — is that an extraordinary circumstance? No, it's not. Not under the law regarding 60b-6, particularly as applies to civil litigants. It's not an extraordinary circumstance under the law regarding equitable tolling of the statute of limitations, and the standard is the same. Well, there's some gross negligence exception. Where's that line? The gross negligence is 7 years to begin with. It's the second attorney who did nothing. It's the months after the second attorney did nothing before Ms. Jones showed up. It's 7 1⁄2 years when the Supreme Court in Gonzales v. Crosby just told us that 9 months is too long. And that right there is enough. The lawyer actually hurts him, right? Because at that point he's no longer pro se. He's not entitled to effective assistance from counsel and habeas. And so he can't have that kind of claim. And so he's a lawyer, right? So he doesn't get any extra breaks for being pro se. Well, I think the lawyer only hurts him to the extent that he does get extra breaks for being pro se. Well, whatever extra breaks he would get, he gets denied because he's no longer pro se, right? He's not a lawyer. I don't think it would be fair to the government if he can get extra breaks for being pro se, then get a lawyer, and then be excused from his lawyer's negligence. You're not really claiming that this is a case of unfairness to the government, what happened in this case. I'm saying litigants have to be punished. The poor government was injured when the district court twice deprived this man of his rights? I'm saying litigants have to be punished. All he wants to do is get his case heard. And you're saying this is unfair to the government? I'm saying litigants need to be able to protect their own rights, pro se or not, and that the government has a right to expect that when habeas relief is granted, there may be time for a retrial if that is necessary. And the seven-year delay significantly will affect our ability to do that due to the loss of witnesses, loss of evidence. This case could have been heard at the right time if the government hadn't made mistakes. Well, I'd have to distinguish the State government from the Federal government if there were mistakes made. And we dispute that. Let's blame it all on the Federal government. Today I have no problem with that, Your Honor. But we do dispute the fact that the government did make mistakes. It is certainly unfortunate. You don't dispute the fact that the district court made mistakes, do you? I think that no. To answer the question, no. I think it is unfortunate that the district court judge and the magistrate judge did not appreciate or understand his attempts to withdraw his claim and file an amended petition. Well, they seem to have not only not appreciated it, they didn't seem to know it was there, because my concern with this whole thing is whether he was right, wrong or otherwise, he was just never answered at all. If he had gotten a response denying the motion, that might have been an impetus to do something. He's got nothing. That's correct. And we don't dispute the silence in the record and the ambiguity of that. The State was served, right? Excuse me? The State was served. Yes. And I looked at his motion several times, and it's file stamped, and it appears that the Court has. I was puzzled by the absolute non-discussion of his motion, because it appears to be filed, file stamped and served. So I can't explain it. But what the Court did, what the magistrate judge recommended was legally correct, and what the district court. I gather that the State doesn't feel an obligation in a situation like that when it is opposite the prisoner, who is pro se, and sees that the Court is really goofing it up badly and, you know, really should act on the motion. It doesn't, in a State that's represented by counsel, the State doesn't feel an obligation to the Court or to its opponent to remind the Court to do what it's supposed to do. I don't think the State has an affirmative obligation to raise the Petitioner's objection for him. If there had been something that ---- It didn't have to do that. All it had to do was say, wait a minute, there's a pending motion you haven't ruled on. I'm sorry? It didn't have to do anything but say, wait a minute, there's a pending motion you haven't ruled on. I don't think the State has that obligation. I would hope that the State, if it did file a paper, would call attention to the fact. But I don't think we have an affirmative obligation to do so, because that's the word against responsibility. So you're saying so before, if this was sort of a behind-the-scenes television show, and we sort of saw what was going on in the Attorney General's office, we could sort of see, I assume it wasn't you, it must have been somebody else ten years ago, sitting there chortling and saying, ha, ha, ha, look at this poor schmuck in prison getting really shafted by the Court here, but he doesn't know any better, and we're getting the benefit of it. I'll just sort of throw it in the back of the file drawer and hope the Court doesn't wake up to it. I would hope. You think that's okay? No, I don't think that's okay, and I don't think that's what happened, and I don't think that there would be any expectation that that could have happened under the law before the endeavor. I think the expectation from the members of my office at that time would be simply that he would take a new petition, put his three exhausted claims on it, and send it back to the Court. So put a new number on it? Like a blank number. I mean, I don't know. You can't just send a petitioner up with a blank number. No, no, no. You just send your own. You can't send a new petition up saying here it is, here's my application, here's my claim. Even despite the order that's set, I'm not going to go and sue anything else? Well, he had seven months to file a new petition before then. You know, if you follow the magistrate's order, he had a year and a half, you know, in counsel's words, before the statute of limitations happened. It's very frustrating often to represent the government against pro pura litigants because the law is construed, you know, to benefit them and to resolve ambiguities in their pleadings in favor of them. But at the same time, we need to have some rules. But here's somebody who did everything right. He filed. He said, I want to withdraw the unadjusted claim. There's nothing wrong with saying dismiss or withdraw. You don't have to file a new petition. Rose v. Lundy doesn't say you must file a new petition. It says you can withdraw or dismiss. And that's what he did. Respectfully, we disagree. We read the cases from this Court before the enactment of a deba to actually require a new petition. Now, certainly, district courts would have had a broad equitable discretion to modify or change had it been called attention to the Court at the appropriate time. But 2004 is too late. I'm sorry. And which case are you talking about that say you have to file a new petition? I might get my briefer on it. Sure. What you're saying is our cases say it's not enough to simply withdraw the unadjusted claim? I'm sorry. Could you repeat the question? Our cases say that it was not under Rose v. Lundy, it was not enough to withdraw the unadjusted claim? I think in general that's correct, yes. In general, that means there's a case that says your dismissal of the unadjusted claim doesn't count. You must file a new petition. We read the Sato v. Russian, Gweiser v. Estelle, and I think Greenwald v. Stewart on page 14 for that proposition. And maybe, I hope I'm not overstating that, but I believe that was certainly the preferred course of conduct in this circuit. Preferred is a different story. There is a difference. Preferred means you could do it two ways, and this way is better. Correct. But the basis is different. So if the district court, if the person had come in and noticed this, if the district court had noticed this motion and had said that, and had said I want to withdraw it, the district court couldn't have said, all right, I'm going to take the petition you already gave me, I'm going to cross this out, and I'm going to consider this a new amended petition, that wouldn't have been okay? I suspect that would have been okay. All right. So that's what he asked to do. I don't think he did ask for that. You know, we have there's a gap between his petition to withdraw, which I do not think the district court was obligated to follow at the time. I'll put an X over it. And now I have a petition with an X over this thing, and it's the requirement that you have to white it out or you have to put it in a different piece of paper, or what do you have to do? The enactment of the ADEPA significantly changed the practice regarding this exhaustion, and we have new cases regarding that in the Orion that discuss this and what this means. But the preferred rule was to file a new petition, a new application, and not to accept the withdrawal of a claim, which is what he attempted to do. Now, certainly, the cases after ADEPA, when we recognize the substantial burdens that the statute of limitations places, would strongly encourage a district court to allow it. But that wouldn't actually, it wouldn't make any difference, because if it were an extension or a relation back or any other reason, whether or not you're crossing something out or filing a new amended petition, I mean, that wouldn't make a difference. I can't see that it would, and yet that's how I read these courts' prior cases. I'm saying post-ADEPA is not an explanation, because it was no better or worse for purposes of preserving the statute of limitations to do one than to do the other. Probably not as a legal principle, but as a matter of clarity and understanding what the appropriate litigant was doing and attempted to do, I think the filing of a new, unique application, as opposed to crossing off or whiting out or withdrawing, did make some difference, and one that would be preferred certainly by the courts,  and so because that was stated. Kagan. But at any rate, you agree that if somebody had noticed this piece of paper, they could have chosen to treat it as a, an amended petition. I believe that's fair. So. But having not noticed it. Not noticing it was the problem. No. Because it was not acted on one way or another, and it could have been acted on in a way that would have saved his problem. Yes, but the district court's failure to notice and act on and to correct the problem is not an error that is going to provide for Rule 60b-6 relief. No, certainly not by itself. You have to add up three things. You have to add up the failure to act on this, on the original motion, the issuance of an order that misled the petitioner, and then his ending up with a couple of incompetent counsel, which may not be a constitutional right to have the counsel. But if you add those three things together, those extraordinary circumstances, that would seem to be the question. Or is it perfectly normal in this system to have three circumstances like that in the same case? In our view, that is not extraordinary, and it's not even a close question. The kind of thing that happens all the time, isn't it? Well, perhaps. But not extraordinary. Maybe we could draw that distinction. The Court obviously understands my position. Before I finish here, I would like to at least bring up the argument that we made in our letter brief, our 28J letter brief, regarding Gonzales and the fact that this is a second Rule 60b motion that was filed in 2004. It should be deemed a jurisdictional problem based on the failure, based on the filing and denial of the prior Rule 60b motion in 1996. I have two problems with that. First, I don't know why you read Gonzales that way. But second of all, the first one, maybe it should have been treated as a 60b motion, but it wasn't. Again, I don't understand how it could be anything other than a Rule 60b motion, based on the fact that it was filed seven months after. He called that and it wasn't treated as that. Okay. I mean, he filed an amended petition today and believes that it's not a 60b6 motion, but I don't think there's any other way to treat it. All right. Well, you brought that up. Thank you, Your Honor. I appreciate it. Thank you. Very, very briefly, Your Honors, just regarding the jurisdictional issue, I think two things. It was waived in the district court because they didn't contest jurisdiction in the district court. What jurisdictional issue? I'm sorry. The last one? The very last one. And because Judge Gonzales never ruled on that prior – she never ruled on the merits of that prior motion to reconsider. She just said, I'm not going to read anything. There was no ruling on the merits of the prior – if that was a prior 60b motion, there was no ruling on the merits. The only other point I'd like to make, and I will say right away, it's absolutely clear this attorney sitting in court today is not the attorney who was on this case before. But the Attorney General's Office and all prosecutors are the only attorneys under the rules of professional conduct who do have an ethical obligation to do justice, to not just be aggressive litigants and get the best result for their client. They have an obligation to do justice. And if the very colorful scenario that Judge Kosinski put forward about them noticing Petitioner's motion to withdraw the unexhausted claim and they just kind of sat there and laughed about it and were very happy that they were able to prevail because the court missed it, if that actually happened, that would be an egregious violation of the rules of professional conduct. This particular attorney had absolutely nothing to do with it if it happened. But there is an obligation on the prosecutor's part to do justice. Justice wasn't done in this case. This young man is doing 30 years to life and has never had an adjudication on the merits because of erroneous rulings that I sure hope are not happening very frequently in these courts. Thank you very much. Let's say we want to agree with you. Did you say agree or disagree? Agree. Okay. What happens to his unexhausted claim? Do you then ask for underlines? Do you ask for a stay and obey? I don't know. There's actually – it's not part of the record. There actually was an effort to go back and start exhaustion proceedings, I think, in 2000. But it only went – If I recall correctly, it was ineffective assistance for failure to ask for a new – make a new trial motion. Right. So there was actually a State habeas petition filed in 2000, and it was ruled on and then never – it wasn't followed up in the court of appeal or Supreme Court. It was probably unexhausted, then, is what you're saying. It continues to be unexhausted, and I'm not sure – my recollection is looking at the claim is that it wasn't worth risking losing the petition altogether to try to go back. I mean, if we went to Judge Gonzalez and she said, yes, I'm definitely going to stay and obey underlines, and I'll let you go do it, I would do it. But it wasn't worth delaying this process anymore, is my recollection. So the exhaustion started, but it's not exhausted yet. And I don't know what we would do. My suspicion is it probably wouldn't be pursued, but I can't say for sure. Okay. Thank you, Your Honors. Thank you both very much. The case case to argue will be submitted. Next case on the calendar is Franco versus Dow Chemical. Counsel, before you go, come on up, Mr. Miller.
judges: Reinhardt, Kozinski, Berzon